J-S16013-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| | :       PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| | : |
| CHARLOTTE RASHAE HILL | : |
| | : |
| Appellant | : No. 963 WDA 2025 |

Appeal from the Judgment of Sentence Entered June 26, 2025
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0008878-2023

BEFORE:  LAZARUS, P.J., BOWES, J., and LANE, J.

MEMORANDUM BY LAZARUS, P.J.:                    **FILED: JULY 27, 2026**

Charlotte Rashae Hill appeals from the judgment of sentence, entered in the Court of Common Pleas of Allegheny County, after pleading guilty to third-degree murder,[1] intimidating a witness,[2] and terroristic threats.[3]  After review, we affirm.

Hill was charged with the above offenses after she shot and killed the victim, Antoine Williams, on November 4, 2023.  At a November 12, 2024 guilty plea hearing, the Commonwealth provided the following facts that would have been presented had Hill gone to trials:

> Officer Matthew Brumbaugh and Officer Jesse Carter of the City of
> Pittsburgh Police Department [] would have testified that on or

---

[1] 18 Pa.C.S.A. § 2502(c).

[2] *Id.* at § 4952(a)(1).

[3] *Id.* at § 2706(a)(1).

about November 4[,] 2023, at approximately [11:19 a.m.,] they responded to Maple Ridge Apartments located at 2115 Park Hill Drive located in Allegheny County.

Upon arrival[,] officers observed a victim identified as [] Williams, and they observed a gunshot wound to the chest. They attempted life-saving measures, but [Williams] was pronounced deceased at the scene.

Officers were then notified that the [assailant] was still in the 2115 Park Hill Drive Apartments. They set up a perimeter[,] eventually taking [Hill] into custody. [] Hill was then transported to the City of Pittsburgh headquarters where she was interviewed by Detective Janine Triolo.

Detective Triolo was speaking with [Hill], who stated that that morning[,] [] Williams had c[o]me over to her apartment. They were verbally and physically fighting during the morning hours. Eventually[, Hill] stated, "I shot him. I should have shot him once, but I kept shooting."

[The] Commonwealth would have then called April Thompson. [] Thompson lives in the bottom apartment as soon as you enter the apartment complex. [O]n November 4[,] 2023[,] she heard arguing in the hallways of the apartment complex, looked through her hole in her door[, and] observed [Hill] and [Williams] arguing.

[Thompson] heard the arguing continue outside of the apartment complex and then [heard] four gunshots. She had opened her apartment door as [Hill] was reentering the apartment complex. [] Hill had a firearm in her hand[.]

[] Thompson confronted [] Hill [and] asked if Antoine shot at her. [] Hill stated, "Shut up, bitch, or I'll shoot you too." [A]s [] Thompson closed the door, she heard [Hill] also state, "I'm going to jail. I shot him."

The Commonwealth would then have called Donita Smith[,] who is the next-door neighbor to [] Hill in the same apartment complex. [] Smith would have testified that on November 4[,] 2023, in the early morning hours[,] she heard [] Hill and [Williams] arguing.

[Smith] observed physical contact and aggressive verbal behavior. [] Smith was with both parties throughout the

morning[,] eventually leading outside where the shooting took place.

[Smith] observed [Hill] brandishing a firearm outside of the apartment complex. She had pleaded with [Williams] to leave the area. [] Williams was then leaving the area. [A]s [] Smith was leaving for work, she heard gunshots and looked back and saw [] Hill walking away.

[T]he autopsy report of [] Williams [] was performed by Dr. Todd Luckasevic. The final pathologic diagnosis was a penetrating gunshot wound to the chest. [Doctor Luckasevic's] opinion was that [] Williams died as a result of a penetrating gunshot wound to the chest, the manner of death homicide.

N.T. Guilty Plea Hearing, 11/12/24, at 5-8.

At the guilty plea hearing, following the recitation of evidence, the sentencing court admitted the autopsy report as an exhibit and asked the Commonwealth if the fatal wound was "one gunshot wound to the chest?" *Id.* at 9. The Commonwealth answered that it "[e]ntered through the back[.]" *Id.* The autopsy report described the bullet's entrance location as the "[l]eft side of the back." Autopsy Report, Commonwealth's Exhibit 2, at 1, 5.

On June 26, 2025, at sentencing, the court explained that it had reviewed, *inter alia*, the presentence investigation report (PSI), the sentencing guidelines, the memorandum in aid of sentencing submitted by Hill's counsel, and a psychologist's report, which detailed Hill's personal history and diagnosis and provided recommendations. *See* N.T. Sentencing Hearing, 6/26/25, at 3-4, 53-54. The court then sentenced Hill to fifteen to thirty years'

incarceration on the third-degree murder conviction,[4] with no further penalty for the intimidating a witness and terroristic threat convictions.

Hill filed a post-sentence motion on July 1, 2025, which the sentencing court denied on July 7, 2025. Hill timely appealed, and both Hill and the sentencing court have complied with Pa.R.A.P. 1925. Hill now raises the following questions for our review:

1. Whether the sentencing court erred in concluding that it was common sense to believe the victim was shot in the back and that it is common sense to believe that he was leaving, when in fact the autopsy indicated that he was shot in his side?

2. Whether the sentencing court abused its discretion by failing to take into account [Hill]'s individualized need for rehabilitation and imposed a sentence with a focus on retribution and the impact of the crime on the victim's family to the exclusion of the other factors?

Appellant's Brief, at 9 (unnecessary capitalization omitted).

Hill contends that the sentencing court erred in concluding that it was "common sense [Williams] was shot in the back trying to leave the circumstance." *Id.* at 16. According to Hill, the autopsy report indicated that Williams was shot in the side, which "materially changes the circumstances in this case" such that the sentencing court "erred and/or abused [its] discretion in forming a sentence around the belief that [Williams] was shot in the back." *Id.* at 17. Hill's second contention is that the sentencing court erred and

---

[4] The guidelines provided a standard range sentence of 90 to 240 months' incarceration for the third-degree murder conviction.

abused its discretion by focusing its sentence on retribution instead of considering Hill's individualized need for rehabilitation. *Id.* at 20-24.

Hill's claims challenge discretionary aspects of her sentence. Such challenges are not automatically reviewable as a matter of right. *See Commonwealth v. Clary*, 226 A.3d 571, 579 (Pa. Super. 2020). Before reaching the merits of these issues, we must determine: (1) whether Hill filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether Hill's brief sufficiently addresses the challenges in a statement included pursuant to Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. *See id.* (citing *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006)).

To properly preserve an issue challenging the discretionary aspects of sentencing, a defendant must object and request a remedy at sentencing or raise the challenge in a post-sentence motion. *See Commonwealth v. McAfee*, 849 A.2d 270, 275 (Pa. Super. 2005). The Pennsylvania Rules of Criminal Procedure specifically caution defendants that, when filing post-sentence motions, "[a]ll requests for relief from the trial court shall be stated with specificity and particularity[.]" Pa.R.Crim.P. 720(B)(1)(a). *See Commonwealth v. Tejada*, 107 A.3d 788, 798–99 (Pa. Super. 2015) (noting trial court must be given opportunity to reconsider its sentence either at sentencing or in post-sentence motion). *See*, *e.g.*, *Commonwealth v.*

***Mann***, 820 A.2d 788, 793–94 (Pa. Super. 2003) (concluding defendant waived discretionary aspects of sentencing claim regarding sentencing court's failure to state reasons for his sentence on record, where defendant's post-sentence motion only argued sentence was unduly severe and trial court abused its discretion under sentencing code).

Instantly, Hill failed to properly preserve her first discretionary aspects of sentencing challenge—that the sentencing court relied on an inaccurate understanding of Williams' injuries—by not raising the argument at sentencing or in her post-sentence motion. Accordingly, this claim is waived.[5] ***See Commonwealth v. Cartrette***, 83 A.3d 1030, 1042–43 (Pa. Super. 2013) (en banc) (concluding substantial question waived for failing to raise it at sentencing or in post-sentence motion).

Hill, however, has preserved her remaining claim—that the sentencing court erred by focusing its sentence on retribution—by raising it in her post-sentence motion. ***See*** Appellant's Post-Sentence Motion, 7/1/25, at 2-3 (unpaginated). Hill also included a Pa.R.A.P. 2119(f) statement in her brief. We must, therefore, determine whether Hill's sentencing issue raises a substantial question.

_____

[5] Even if not waived, the sentencing court was not mistaken in believing Williams had been shot in the back. The autopsy report stated that Williams was shot in the "[l]eft side of the back[.]" ***See*** Autopsy Report, ***supra***. Accordingly, Hill's argument would fail because the sentencing court correctly understood where the bullet entered Williams' body.

A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process. *See Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010). Here, Hill's contention that the sentencing court disregarded her rehabilitative needs constitutes a substantial question. *See Commonwealth v. Dodge*, 77 A.3d 1263, 1272–73 (Pa. Super. 2013) (excessive sentence claim in conjunction with assertion that sentencing court disregarded rehabilitation presented substantial question); *see also Commonwealth v. Riggs*, 63 A.3d 780, 786 (Pa. Super. 2012) (averment that court "failed to consider relevant sentencing criteria, including the protection of the public, the gravity of the underlying offense and the rehabilitative needs" of defendant raised substantial question). Therefore, we turn to the merits of Hill's claim.

As a general matter, the sentencing court is charged to impose a sentence that is "consistent [with] the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). Our standard of review in this context is well-established:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its

judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006) (citation omitted). "The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007) (internal quotation marks and citation omitted). In conducting our review, this Court must also "have regard" for: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the opportunity of the sentencing court to observe the defendant, including any PSI; (3) the findings upon which the sentence was based; and (4) the Pennsylvania Sentencing Guidelines. *See* 42 Pa.C.S.A. § 9781(d)(1)-(4).

Further,

[w]here the sentencing court had the benefit of a [PSI], we can assume the sentencing court was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. Further, where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code.

*Commonwealth v. Radecki*, 180 A.3d 441, 471 (Pa. Super. 2018) (quoting *Commonwealth v. Griffin*, 65 A.3d 932, 937 (Pa. Super. 2013)).

Hill avers that the sentencing court "never stated anything in regard to consideration of [her] individualized need for rehabilitation." Appellant's Brief, at 21. Hill additionally posits that the sentencing court never considered her

ability to be rehabilitated, and, instead, focused "only on what she did to [Williams]." *Id.* at 23.

Based on our review of the record and the relevant case law, we conclude that Hill's claim is meritless. The sentencing court reviewed the PSI, as well as other indicia of Hill's rehabilitative needs, such as the psychologist's report, and weighed the evidence and balanced the sentencing factors. *See Radecki*, *supra*; *see also Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988) ("Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true [] in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations."). As such, we find no abuse of discretion in Hill's sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 7/27/2026